512 A.2d 661

**Daniel G. LUCERA, and Anna B. Lucera, his wife, Appellants,**

**v.**

**JOHNS–MANVILLE CORPORATION, Johns-Manville Sales Corp., Raybestos-Manhattan, Inc., Owens-Corning Fiberglas Co., Forty-Eight Insulations, Inc., Nicolet, Inc., Pittsburgh Corning Co., GAF Corporation, Celotex Corporation, Armstrong Cork Co., Unarco, Inc., H.K. Porter Co., Southern Asbestos Co., J.P. Stevens, Inc., Eagle-Picher Industries, Amatex Corp., Delaware Asbestos and Rubber Co., Pacor, Inc., Fibreboard Corp., Keene Corp., Garlock, Inc., Turner-Newall, Ltd., Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed July 2, 1986.

522

Martin Greitzer, Philadelphia, for appellants.

Margaret M. Chaplinsky, Philadelphia, for appellees.

Before CAVANAUGH, WICKERSHAM and HOFFMAN, JJ.

CAVANAUGH, Judge:

This is an appeal from an order entered on July 16, 1984 by the Honorable Levan Gordon of the Philadelphia Court of Common Pleas. This action was commenced by summons in February, 1976 (although the complaint was not filed until 1979). Appellee GAF's motion for summary judgment was dismissed by the Honorable Harry A. Takiff because the motion had not been filed in accordance with the filing deadlines set by the court at status conference. A non-jury trial was then held with the issue of whether the action had been filed within the two year statute of limitations considered first. The lower court dismissed the action because it was untimely. Appellants appealed the non-jury trial verdict and requested a jury trial. (This was permissible because at that time, a special non-jury trial program was in effect which permitted an automatic de novo appeal to a jury trial.) While awaiting a listing for a jury trial, GAF filed another motion for summary judgment based on the statute of limitations. After a hearing, Judge Gordon entered an order granting the motion for summary judgment on behalf of GAF and all other defendants. This appeal followed. Only GAF remains a viable appellee in this action.

Daniel Lucera was employed from 1944 to 1972 as a pipecoverer and insulator at various places, including the Philadelphia Naval Shipyard and the New York Shipbuilding and Drydock Company. Throughout his employment, appellant worked aboard U.S. naval ships both in drydock and on the navigable waters of the United States. Appellant claims that he was first diagnosed as having asbestosis in 1972 but that he did not know his injury was caused by the conduct of another until 1975 or 1976. According to appellant, GAF was and/or is a manufacturer and supplier of asbestos products to the Philadelphia Naval Shipyard and the New York Shipbuilding and Drydock Company.

## I.

Appellant first argues that the two year statute of limitations does not apply to the instant action because his claim falls within admiralty jurisdiction and therefore the doctrine of laches applies. We disagree.

The question before us is whether admiralty jurisdiction lies for the claim of a civilian employee who contracts asbestosis in the course of his job at the naval shipyard.

■ The United States Supreme Court has developed a test to determine whether a tort claim falls within admiralty jurisdiction. A tort action is within admiralty jurisdiction if (1) the injury has a maritime locality and (2) the injury has a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). The decision in *Executive Jet* "seemed to establish that some definite maritime flavor was henceforward to be a prerequisite for all admiralty tort jurisdiction." G. Gilmore, C.L. Black, *The Law of Admiralty*, 31, n. 98d (1975).

Pennsylvania has applied the *Executive Jet* test to asbestosis cases, most notably in *Volpe v. Johns-Manville Corp.*, 323 Pa.Super. 130, 470 A.2d 164 (1983). In *Volpe*, appellant, a civilian employee at the Philadelphia Naval Shipyard, claimed he developed asbestosis as a result of his job as a welder at the shipyard. Mr. Volpe had worked on ships both in drydock and on the navigable waters of the United States. He claimed that while at the shipyard the conduct of appellees, who were in the business of mining, manufacturing, selling or distributing asbestos and asbestos products, caused his asbestosis. Appellees moved for summary judgment on the ground that Volpe's claim was barred by the statute of limitations. Judge Takiff held that admiralty jurisdiction did not apply to Volpe's action, and so the statute of limitations, not laches, governed the length of time available for Volpe to commence his action. Summary judgment was entered. An appeal followed, wherein this court affirmed, holding that Mr. Volpe's claim was barred by the statute of limitations. In so holding, the court

espoused a well-reasoned discussion of the appellant's claim that admiralty jurisdiction, (and thus, laches) applied to his tort action.

Utilizing the *Executive Jet* test, *supra*, we noted that because Mr. Volpe spent seventy percent of his time on ships in navigable waters at the Navy Yard, his injury had a maritime locality, thus satisfying the first prong of the *Executive Jet* test.

We held, however, that Mr. Volpe's injury did not satisfy the second prong of the test—that the injury have a significant relationship to traditional maritime activity. In so holding, our analysis centered around two general considerations: 1) whether the job performed by the injured party was a distinctively maritime role, and 2) whether the perils of the job were created by any hazard of the sea.

As to whether the job performed by the injured person was a distinctively maritime role, we wrote in *Volpe:* "Welding, even welding necessary to the function of a ship, is not a distinctively maritime role." *Volpe v. Johns-Manville Corp., supra*, at 137, 470 A.2d at 168. Moreover, Volpe worked on vessels in a shipyard, not on ships in active service. The work he performed involved major repairs which required special skills and equipment. This evidenced that Mr. Volpe was not performing a traditional seaman's role when he contracted asbestosis. *Id.*, 323 Pa.Superior Ct. at 138, 470 A.2d at 169.

As to whether the perils of the job were created by any hazard of the sea, we wrote that "the injury he suffered was the same as he would have suffered had he worked on boilers in a factory on dry land." *Id.* Therefore, Volpe's peril was not created by any hazard of the sea. In short, Volpe's injury lacked that "definitive maritime flavor" which *Executive Jet* requires.

Subsequent Pennsylvania decisions have followed *Volpe's* analysis. In *Gravinese v. Johns-Manville Corp.*, 324 Pa. Super. 432, 471 A.2d 1233 (1984), appellant's decedent was a pipe coverer and insulator on ships both in drydock and on

navigable waters of the United States. The court in *Gravinese* again held that appellant's claim did not pass the second prong of the *Executive Jet* test—that the injury must have a significant relationship to traditional maritime activity. We wrote that the work in which appellant's decedent was engaged "was not the same as that which was traditionally performed by members of a ship's crew. The dangers he faced as a shipyard worker were not the traditional concerns of admiralty." *Id.*, 324 Pa.Superior Ct. at 437, 471 A.2d at 1236.

In *Cianfrani v. Johns-Manville Corp.*, 334 Pa.Super. 1, 482 A.2d 1049 (1984), appellant was a navy yard pipefitter who contracted asbestosis. On the basis of *Volpe, supra,* we declined to apply admiralty jurisdiction (and laches), stating: "In the instant case, appellants have advanced no arguments to distinguish Mr. Cianfrani, as a navy yard pipefitter, from a navy yard welder. Neither worker faced a peril created by any hazard of the sea." *Cianfrani v. Johns-Manville Corp., supra*, 334 Pa.Super. at 5, 482 A.2d at 1051. *See also Berardi v. Johns-Manville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067 (1984) where we also held that a pipefitter's asbestosis claim did not lie in admiralty jurisdiction. *See also Symbula v. Johns-Manville Corp.*, 343 Pa.Super. 541, 495 A.2d 598 (1985).

■ Despite our attempts to define the "significant relationship to traditional maritime activity" by reference to the two aforementioned categories, it is really the second (the "peril" aspect) which is the *sine qua non* of the second prong of the *Executive Jet* test. The *Volpe* court opined that a claim by a ship's cook would fall within admiralty jurisdiction *not* because cooking is a distinctively maritime role, but rather because the perils faced by a ship's cook are created by the hazards of the sea.

We note that not all jurisdictions are in accord with this court's interpretation of *Executive Jet.* In fact, the *Volpe* court expressly declined to follow *White v. Johns-Manville Corp.*, 662 F.2d 234 (4th Cir.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982) which found that

admiralty jurisdiction lies for an insulation installer's claim. In *White,* the plaintiffs alleged that they installed asbestos insulation at shipyard and drydock areas as well as aboard vessels on navigable waters. The Fourth Circuit Court of Appeals held that the work done by the shipyards bore a significant relationship to traditional maritime activity. The court held that the installation of insulation was essential to the maritime industry.

■ In *Volpe* the court noted that Mr. Volpe was as involved in a traditional maritime activity as the successful plaintiff in *White* but did not interpret *Executive Jet* as holding that admiralty jurisdiction should lie in such a case. *Volpe* instead relied heavily on the analysis in a Ninth Circuit Case, *Owens-Illinois, Inc. v. United States District Court,* 698 F.2d 967 (9th Cir.1983). This court is not bound by *White, supra.* "In the absence of a ruling by the United States Supreme Court, the decision of a federal intermediate appellate panel is not binding on Pennsylvania courts." *Cianfrani v. Johns-Manville Corp.,* 334 Pa.Super. 1, 6, 482 A.2d 1049, 1051 (1984).

■ Turning to the facts in the instant case, appellant worked around asbestos as a pipecoverer and insulator at various locations aboard U.S. naval ships both in drydock and on the navigable waters of the United States. In *Gravinese v. Johns-Manville Corp.,* 324 Pa.Super. 432, 471 A.2d 1233 (1984) appellant decedent was also a pipe coverer and insulator who worked on ships both in drydock and on navigable waters of the United States. As in the other cases of the *Volpe* progeny, we held there that admiralty jurisdiction did not lie. Appellant has presented no authority to distinguish the instant case. Appellant's role as a pipecoverer and insulator was not a distinctively maritime role; nor were the perils of his job created by any hazard of the sea. Therefore, the second prong of the *Executive Jet* test has not been met: the injury did not bear a significant relationship to traditional maritime activity. Accordingly, admiralty jurisdiction does not lie, and the two year statute of limitations, not laches, governs.

## II.

Appellant argues in the alternative that even if laches does not govern the instant case, he nevertheless commenced the action within the two year statute of limitations.

The lower court entered an order granting summary judgment on the ground that the action was not brought within the statute of limitations.

Pa.R.C.P. 1035(b) provides that summary judgment may be entered: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a motion for summary judgment the court must view the evidence in the light most favorable to the non-moving party and enter judgment only if the case is clear and free from doubt. *Berardi v. Johns-Manville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067 (1984); *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978).

In the recent case of *Chandler, et al. v. Johns-Manville Corp., et al.,* 352 Pa.Super. 326, 507 A.2d 1253, (1986), we wrote:

Applying these rules, we must determine if the court below erred in deciding as a matter of law that the appellant's claim was barred by the statute of limitations. The applicable statute of limitations in effect at the time that the cause of action arose was set forth in the Act of June 24, 1895, P.L. 236 § 2, 12 P.S. § 34, repealed by Judiciary Act Repealer Act, Act of April 25, 1978, P.L. 202, eff. June 27, 1978, currently codified at 42 Pa.C.S.A. § 5524(2), which provides that "The following actions and proceedings must be commenced within two years: (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another."

The appellant alleges in his complaint that he suffered from asbestosis, as a result of contact with materials manufactured by the various defendants. The disease of

asbestosis has been referred to as a "creeping disease". See *Staiano v. Johns-Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681 (1982). Our court sitting en banc in *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) established the rule for determining when the statute of limitations commences running in such cases and stated at 324 Pa.Super. 136–7, 471 A.2d 500:

> We find that the statute of limitations begins to run in "creeping disease" cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.

*Cathcart* modified the more complex test set forth in *Volpe v. Johns-Manville Corp.*, 323 Pa.Super. 130, 470 A.2d 164 (1983) which required that before the statute of limitations commenced running that there must be (1) knowledge of the injury; (2) knowledge of the operative cause of the injury and (3) knowledge of the causal relationship between the injury and the operative conduct. While in *Berardi v. Johns-Manville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067 (1984) a majority of the panel affirmed the *Volpe* tri-partite test, we agree with Judge Beck's statement in *Wheeler v. Johns-Manville Corp.*, 342 Pa. Super. 473, 477, 493 A.2d 120, 122 (1985):

> We believe that *Cathcart* should be followed because it is the most recent holding of the court en banc and *Berardi*, as a panel decision, cannot overrule the court en banc.

Judge Olszewski in his concurring opinion in *Beradi, supra,* stated that he would apply the less complicated two part test of *Cathcart, supra.* The recent cases of *Price v. Johns-Manville*, 336 Pa.Super. 133, 485 A.2d 466 (1984) and *Pastierik v. Duquesne Light Co.*, 341 Pa.Super. 329, 491 A.2d 841 (1985) followed the rule in the *Cathcart* case. See also, *McGowan v. University of Scranton*, 759 F.2d 287 (CA 3, 1985) *Kelly v. Johns-Manville Corp*, 590 F.Supp. 1089 (E.D.Pa.1984).

█ Turning to the facts of the instant case, appellants concede that the asbestosis was first diagnosed in 1972, and do not contend that they did not know of the injury then. However, they contend that Mr. Lucera did not learn until 1975 or 1976 that his injury was caused by the conduct of another party. Thus, the question before us centers on the second half of the *Cathcart* test. We find appellant's contention to be groundless. The facts indicate that appellant knew by 1972 that his injury was caused by the conduct of a third party. And, if he did not actually know, he reasonably *should* have known.

In 1972, Mr. Lucera filed a disability claim for his asbestos related injury. At trial, the following testimony was elicited from Mr. Lucera:

Q. Is this the form that you used to make that ... claim for disability? Is that your signature on that page?

A. Yes, it is.

Q. That's your handwriting under block number twelve, isn't it?

A. Yes.

Q. What does that say?

A. "I have been exposed to asbestos material which I work with at Philadelphia Naval Shipyard."

Q. That's under "Cause of Injury"? Block number twelve is for cause of injury?

A. Yes.

On direct examination, Mr. Lucera testified as follows:

Q. Mr. Lucera, can you tell His Honor when was the first time that you knew that your injury was caused by conduct of another party?

A. About 1972.

Mr. Lucera further testified that he was examined in 1972 by a Dr. Sokolowski. Dr. Sokolowski sent his findings to Mr. Lucera's physician, Dr. Bernardi. Mr. Lucera went "immediately" to Dr. Bernardi who informed him that he had an asbestos-related injury, and, in Mr. Lucera's words, "He suggested that I should not continue to work around

asbestos fumes, and that sort of environment with—that's pertaining to the asbestos, because the longer I would have stayed in there the more I would accumulate." Mr. Lucera retired from the Philadelphia Navy Yard on October 17, 1972.

It is clear from the facts set forth above that Mr. Lucera knew in 1972 that his injury was caused by another party's conduct. Yet, appellant would have us hold that there is a factual dispute in this case which requires that we reverse the grant of summary judgment. He argues that his testimony at trial was contrary to the facts he gave his attorney during trial preparation. He further alleges that he was confused and that the trial court erred in not allowing him to clarify his answers.

In answering his own attorney's question as to when he knew his injury was caused by the conduct of another party, appellant answered, "[a]bout 1972". His attorney then asked:

"And what did you know in 1972?"

Appellant answered:

"That I had the early beginnings of asbestosis."

Later, his attorney asked:

"When did you first consult an attorney for the condition?"

Appellant answered:

"About in '76 when I read it in the newspapers."

Appellant was not permitted to elaborate on this point. He argues that had he been permitted, he would have testified that he did not know until 1975 or 1976, when he read newspaper articles, that the conduct of another caused his injuries.

Moreover, after the trial, in answering GAF's motion for summary judgment, appellant attached an affidavit to its answer which contained the following:

"I did not know in 1971 or 1972 that my asbestosis was caused by the conduct of another party."

The affidavit further stated that he did not learn that the injury was caused by the conduct of another party "until sometime in 1975 or early 1976."

■ Concerning this affidavit, the lower court wrote: "The affidavit ... strains the chords of credibility, as it appears to totally contradict his testimony at the non-jury trial." The lower court did not abuse its discretion in granting a motion for summary judgment even though it disregarded the appellant's affidavit because it was not wholly credible. In *Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181 (1981), this court wrote, "This is not to say that there are not instances where summary judgment may be ordered in malpractice actions based upon a statute of limitations defense. Entry of summary judgment is proper where.... the evidence relied upon by the plaintiff is inherently incredible...." (Citation omitted.) While *Taylor* was a malpractice suit, we do not see any reason why this principle should not apply to a "creeping disease" case.

However, even if we were to concede that appellant in fact did not know that his injury was caused by the conduct of another party in 1972, it is clear to us that he reasonably *should* have known at that time.

■ Appellant had worked with asbestos products for some twenty-eight years when he was diagnosed as having asbestosis in 1972. His own physician told him that he should not continue working around asbestos. This would have been sufficient to put a reasonable man on notice that he should investigate the cause. Moreover, he filed a disability claim wherein he alleged that his asbestosis was caused by his work. This suggests that he had some notion, at the very least, of the cause. Something less than a diligent inquiry would have revealed that his injury was caused by another party.

■ It is of no legal consequence whether appellant was aware in 1972 that he had a legal cause of action. *Cathcart* does not require such knowledge. *Berardi v. Johns-Man-*

*ville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067 (1984). Moreover, appellant need not have known *who* the other party was that caused that injury. *Cathcart* only requires that the injured party know or reasonably should know that his injury was caused by *another's* conduct.

We hold that because appellant knew that he had asbestosis in 1972 and reasonably should have known that another caused his injury that same year, his failure to commence the action until 1976, some two years past the time the statute of limitations ran out, bars his recovery in this case.

Order affirmed.