# F&G Associates v. Pomerantz

*P. Stephen Lerario,* for plaintiffs.

*William A. Harvey* and *David Zalesne,* for defendant Pomerantz.

*Arthur W. Lefco,* for defendant Mesirov, Gelman, Jaffe, Cramer & Jamieson.

ACKERMAN, *J.*, January 18, 2000—Defendants, Mesirov, Gelman, Jaffe, Cramer and Jamieson, and defendant, Gerald Pomerantz, Esquire, filed a motion for summary judgment in their favor against plaintiffs, F&G Associates L.P., Jeffrey Brown and Michael Grasso. Plaintiffs filed a response thereto and defendants filed a reply thereto.

This is a legal malpractice action in which the plaintiffs assert that they were injured as a result of their former attorneys' failure to disclose information about certain real property the plaintiffs acquired.

Defendants claim that the plaintiffs' claims are time barred.

This court, after consideration of defendants' joint motion for summary judgment, plaintiffs' response thereto and defendants' reply thereto, granted the defendants' joint motion for summary judgment against the plaintiffs.

Plaintiffs filed the instant appeal.

Plaintiffs assert that Gerald Pomerantz, then an employee of Mesirov, Gelman, Jaffe, Cramer & Jamieson, knew in September 1994, when he began to represent plaintiffs in acquiring and developing certain real property, that access to such property was privately controlled by Arnold Galman, that plaintiffs had no such knowledge, and that Pomerantz breached his duties to plaintiffs by not telling them of the access problem. Plaintiffs assert that they were required to expend various sums to acquire an easement over the access road and seek to recover these costs from defendants.

On January 27, 1998, three years and two months past the time that plaintiffs learned that Galman asserted control over the road, they filed this lawsuit for legal malpractice on theories of negligence, breach of contract and

breach of fiduciary duty. The gravamen of their complaint is that defendants knew that Adams Run Boulevard was a private road, but failed to so advise them. In answering the complaint, defendants each raised the statute of limitations in their new matter. The facts as pled by plaintiffs and the undisputed record evidence establish that the negligence and breach of fiduciary duty claims are time barred. Moreover, the complaint fails to allege facts which, if proved, would entitle plaintiffs to relief for breach of contract.

A. *The Complaint and the Undisputed Evidence of Record Establishes That Plaintiffs Had Actual Knowledge of Their Alleged Injury Outside the Two-Year Limitations Period*

The statute of limitations on negligence claims and claims for breach of fiduciary duty is two years. 42 Pa.C.S. §5524(7). Because this lawsuit was filed on January 28, 1998, those claims would had to have arisen after January 27, 1996 to be viable. The limitations period for tort actions begins "when the alleged breach of duty occurs." *Garcia v. Community Legal Services Corp.,* 362 Pa. Super. 484, 497, 524 A.2d 980, 986 (1987).

Here, the plaintiffs allege that the lawyers had a duty to inform them that the road was privately owned. This duty and its breach would have arisen in September 1994, when Pomerantz began representing plaintiffs with respect to the property (complaint, para. 18), and when the lawyers purportedly failed to disclose that Adams Run Boulevard was a private road.

Plaintiffs may seek to toll the statute under the discovery rule by arguing that they had no knowledge of the breach at that time. However, under the discovery

rule, the limitations period may be tolled only until the injured party, in the exercise of due diligence, knew or should have known of the injury. *Pocono International Raceway Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 84-85, 468 A.2d 468, 471 (1983). Here, the factual allegations of *the complaint itself* prove that plaintiffs had actual knowledge of their injury within the limitations period: they admit, in paragraph 27, that *they learned of Galman's right to close the road in late November 1994,* two months after defendants began representing them. Thus, the statute for filing this suit expired in November 1996, 14 months before it was commenced.

The record contains a trio of letters that show plaintiffs' actual knowledge of Galman's alleged control of the road within the limitations period. In June 1995, Galman's attorney advised them that Galman would close the road if F&G did not help defray its costs. (June 7, 1995 letter from Meloff to Grasso.) In October 1995, Galman did the same. (October 13, 1995 letter from Galman to Grasso.) Finally, and most telling, is Grasso's own letter to Galman of October 24, 1995, which *expressly accuses* the lawyers of failing to disclose their purported knowledge of the status of the road. Even if the statute were tolled until October 1995, however, it would have expired in October 1997, three months prior to the filing of this suit.

It is anticipated that plaintiffs will argue that the statute on their claims did not begin to run until they suffered a loss when Galman closed the road. However, the Superior Court specifically rejected this proposition in *Liberty Bank v. Ruder,* 402 Pa. Super. 561, 587 A.2d 761 (1991). In that legal malpractice action, the client bank sued its former attorneys for failing to properly document loan transaction. Because the bank had not yet ex-

hausted its remedies against the debtors, the trial court found that it had not sustained an actual loss; as a result, its malpractice claim was premature. The Superior Court reversed. The court held that the claim had accrued where the fact of damages had been established, although the amount of the damages was uncertain.

Recently, in *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033 (Pa. Super. 1999), the Superior Court reiterated that rule. In that bad faith action, the trial court granted summary judgment in the insurer's favor on statute of limitations grounds. The appellant argued that the statute on their action did not begin to run until the full extent of the damages and the need for indemnification were determined at the end of the underlying litigation. The appellate court affirmed the lower court, holding again that a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined. 738 A.2d at 1042.

It is of interest that as recently as December 9, 1999, the Federal District Court for the Eastern District of Pennsylvania in the case of *Mantakounis v. Aetna Casualty & Surety Co.,* (E.D. Pa. Dec. 9, 1999) Kelly, J., held that a plaintiff's breach of contract claim was time barred under the discovery rule, because he failed to file his action within four years of the date he first became aware of problems with the loss investigation initiated by the defendant insurer, even though he did not believe at the time that defendant had breached the contract. Judgment as a matter of law was entered for the defendant.

Here, plaintiffs knew in November 1994, that they had been injured. At that time, they had foreclosed on the mortgage and were financially committed to the shopping center. They had agreed to a lease provision that would reduce the rent from Superfresh in the event of a

road closing. Under Pennsylvania law, therefore, their claim accrued in November 1994, although the extent of their alleged damages was not yet fixed.

In sum, plaintiffs concede in their sworn complaint that they knew of the lawyers' alleged breach in November 1994; record evidence conclusively demonstrates that they knew in October 1995, at the latest. No reasonable jury could conclude that the limitations period started any later. Accordingly, defendants are entitled to summary judgment in their favor on the counts for negligence and breach of fiduciary duty.

### B. *Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted for Breach of Contract*

In an attempt to avoid the statute of limitations problem, plaintiffs seek to take advantage of the four-year limitations period governing contract actions in Pennsylvania, 42 Pa.C.S. §5525, by claiming relief on a breach of contract theory. The breach of contract claim against Pomerantz set forth at Count II asserts in pertinent part:

"(36) Plaintiffs hereby incorporate by reference the averments contained in paragraphs 1-35 above, as though fully set forth at length herein.

"(37) Plaintiffs entered into an oral contract with defendants Pomerantz and Mesirov upon defendant Pomerantz's promise to provide legal services to plaintiffs on behalf of himself and his firm, the defendant Mesirov.

"(38) Plaintiffs relied upon defendant Pomerantz's promise to provide legal services, and Pomerantz's failure to provide these services in a reasonable manner, as set forth in paragraph 34 above, is a material breach of his contract with plaintiffs.

"(39) By reason of the breach of contract by defendant Pomerantz, plaintiffs have been severely damaged as set forth in paragraph 25 above in the amount of $229,445.56."

Paragraph 34 alleges that Pomerantz was negligent for failing to advise plaintiffs that Galman could limit access to Adams Run Boulevard and for violating his ethical obligations. Plaintiffs' damage claim, set forth in paragraph 35, seeks damages for the amount paid to Galman, finance charges thereon, legal fees incurred in obtaining use of the road, and legal fees for the instant action. Count VI, the contract claim against Mesirov, is substantially similar to Count II.

These claims fail to state claim for breach of contract under Pennsylvania law. The mere performance of legal duties does not suffice to create a viable breach of contract claim. *Costello v. Primavera,* 35 Phila. 468, 494 (1998). A client who sues his attorney on an assumpsit theory must allege that an attorney breached a contract term or failed to follow a specific instruction of the client. *Rogers v. Williams,* 420 Pa. Super. 396, 401, 616 A.2d 1031, 1033 (1992); *Hoyer v. Frazee,* 323 Pa. Super. 421, 425-26, 470 A.2d 990, 992-93 (1984). However, plaintiffs' complaint does not plead facts that would support a breach of contract claim.

Plaintiffs' assumpsit claim is based on the bare averments that "plaintiffs entered into an oral contract with defendants Pomerantz and Mesirov upon defendant Pomerantz's promise to provide legal services to plaintiffs" and "the defendants agreed to provide legal services to the plaintiffs." (Complaint, paras. 37 and 50.) They nowhere aver what the contract terms were or what specific provision was breached.

Plaintiffs' assertion that defendants "failed to provide these services in a reasonable manner" does not constitute a contract claim. As the court held in *Hoyer v. Frazee,* 323 Pa. Super. at 426, 470 A.2d at 992-93 (1984), a complaint based on the averment that an attorney failed to exercise the requisite duty of care toward them, and which "did not aver a breach of a specific provision of their contract," does not state a "true contract cause of action." See also, *Saferstein v. Paul, Mardinly, Durham, James Flandreau & Rodger P.C.,* no. 96-4488, 1997 U.S Dist. Lexis 2375 at *14 (Feb. 28, 1997 E.D. Pa.), *aff'd,* 127 F.3d 1096 (3d Cir. 1997) (dismissing a legal malpractice breach of contract claim because it was "clearly based upon alleged violations of the standard of care owed by an attorney," rather than on a breach of a specific client instruction or specific contract provision); *Tuman v. Genesis Associates,* 894 F. Supp. 183, 186 (E.D. Pa. 1995) (where claim is based on defendant's failure to provide plaintiff with acceptable professional services, plaintiff must allege that defendant breached more than the non-contractually created duty to state a contract claim); *Lactaid Inc. v. Youtie,* civil no. 85-6751, 1986 WL 3587 (E.D. Pa. Mar. 18, 1986) (plaintiff may not proceed in contract on the theory that an obligation to exercise reasonable care was an express or implied term of the contract).

In *Fiorentino v. Rapoport,* 693 A.2d 208, 213 (Pa. Super. 1997), the Superior Court reiterated the rule that a viable breach of contract claim requires a breach of a specific contract term or instruction. Accordingly, "the attorney's liability must be assessed under the terms of the contract." *Id.* "[W]ith a legal malpractice claim sounding in assumpsit, the plaintiff must show that the defendant attorney failed to follow the client's instructions."

693 A.2d at 214. Here, plaintiffs fail to identify even a single contract provision that defendants breached, or a specific instruction with which defendants failed to comply.

Plaintiffs often assert negligence and breach of contract claims, in the legal malpractice context, based on the same conduct in an attempt to have two bites at the apple. This is impermissible. A contract claim must relate to conduct distinct from a tort claim. *Guy v. Liederbach,* 501 Pa. 47, 62, 459 A.2d 744, 752 (1983). In the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct. See *Sherman Indus. Inc. v. Goldhammer,* 683 F. Supp. 502, 506 (E.D. Pa. 1988). If they were, "claims in tort and claims in breach of contract, at least within the context of service contracts, would be indistinguishable." *Official Committee of Unsecured Creditors of Corell Steel v. Fishbein and Company P.C.,* 1992 WL 196768 at *5-6 (E.D. Pa. 1992). Here, plaintiffs simply restate their tort claim as one for breach of contract to avoid the bar of the statute of limitations. The contract claim must, therefore, be dismissed.

In the plaintiffs' response to the motion for summary judgment, the plaintiffs submit an affidavit of Michael Grasso and have relied on that affidavit in an attempt to defeat summary judgment. Defendants contend that Grasso flatly contradicts allegations he previously made in his complaint, allegations which are deemed judicial admissions and which cannot be contradicted to avoid entry of summary judgment.

Mr. Grasso's new affidavit states that he was completely unaware that Pomerantz and Mesirov had previously acted as Galman's "private road attorneys" until sometime after August 1996. (Grasso affidavit, para. 9.)

However, this is completely irrelevant to the statute of limitations issue. Mr. Grasso's letter of October 24, 1995 specifically blames the Mesirov firm for F&G's obligation to pay money to Galman to keep the roadway open, "as it was their errors and their failures to disclose that allowed this private road claim to exist and remain unresolved." The statute of limitations begins to run when a party is aware that he has suffered harm which was caused by another. *Cathcart v. Keene Industrial Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984) (en banc). He is then on inquiry notice and has two years to discover what parties may have caused him harm, and to commence suit. Here, even if Grasso could assert that he was unaware that Pomerantz had previously represented Galman, it makes no difference. He was aware, he thought, that Mesirov's errors had caused him harm as of October 24, 1995, and he had no more than two years thereafter in which to bring his claims.

In addition, plaintiffs' complaint must fail because Pomerantz did not represent them when they acquired the mortgage. Rather, he represented the seller, RPT, while Messrs. Grasso and Brown were represented separately. Thus, Pomerantz owed them no duty of disclosure even if he knew that Galman had the right to close the road. To avoid this problem, plaintiffs have, through the affidavit of Mr. Grasso, attempted to recast the facts. Mr. Grasso avers, "Pomerantz and Mesirov were retained by myself, Jeffrey Brown and F&G with regard to the development of the shopping center . . . F&G retained Pomerantz and Mesirov to acquire and foreclose upon a mortgage owned by RPT Penn Equity LP . . . F&G requested disclosure of any conflicts . . . Pomerantz and Mesirov failed to make any disclosure or provide a con-

flict letter regarding Arnold Galman." (Affidavit of Michael Grasso, general partner, para. 3.)

These averments flatly contradict the averments of the complaint by which this action was commenced, and which was also verified by Mr. Grasso. In the complaint, plaintiffs averred:

"(12) At the time that Brown and Grasso sought to purchase the mortgage, Pomerantz represented RPT.

"(16) During this time frame, Pomerantz also represented Brown and Grasso in other business ventures.

"(18) In September 1994, Pomerantz began representing Brown and Grasso in business ventures involving the property.

"(21) On November 7, 1994, Brown and Grasso foreclosed on the mortgage for the property."

In other words, the complaint asserts that Pomerantz and Mesirov represented RPT, the seller of the mortgage, and did not begin to represent Brown and Grasso, except in unrelated matters, until September 1994, after Brown and Grasso had already acquired the mortgage. Now, Mr. Grasso avers that plaintiffs retained Pomerantz and Mesirov "to acquire and foreclose upon" the mortgage, and that "F&G requested disclosure of any conflicts." He further avers, "while Pomerantz and Mesirov provided a conflict letter regarding RPT Penn Equity, Pomerantz and Mesirov failed to make any disclosure or provide a conflict letter regarding Arnold Galman." (Grasso affidavit, para. 3.)

Plaintiffs have attached a copy of the conflict waiver dated April 19, 1994. It is obvious from that document that the Mesirov firm was not representing Grasso in connection with the purchase of the mortgage; on the contrary, it was representing RPT. This is exactly what plaintiffs averred in their complaint. Those averments

▬▬▬▬▬▬▬          ▬▬▬▬

are judicial admissions which they may not now contradict. *Tops Apparel Manufacturing Co. Inc. v. Rothman,* 430 Pa. 583, 244 A.2d 436 (1968). Moreover, where an averment in an opposing party's affidavit is contradicted by his own prior statements in the record such that the statement in the affidavit cannot reasonably be believed, summary judgment may be granted. 3 Goodrich-Amram 2d, Procedural Rules Service, §1035(b):14; *Lucera v. Johns-Manville Corp.,* 354 Pa. Super. 520, 512 A.2d 661 (1986). Here, plaintiffs' verified complaint states that defendants represented RPT and not the plaintiffs in connection with the sale of the mortgage. Thus, the averments in Mr. Grasso's affidavit which contradict the averments in plaintiffs' complaint should be disregarded. Plaintiffs' response does not provide any basis to prevent the dismissal of plaintiffs' claims for negligence and breach of fiduciary duty based on the expiration of the statute of limitations.

For all the foregoing reasons, the motion for summary judgment was properly granted.