**Robert VANAMAN, Executor of the Estate of Violet Vanaman, Deceased and Robert Vanaman, Widower in His Own Right, Appellant**

v.

**DAP, INC. and Crown Cork & Seal Company, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 4, 2008.

Filed Feb. 11, 2009.

**604**

Robert E. Paul, Philadelphia, for appellant.

Mathieu J. Shapiro, Philadelphia, for Crown Cork, appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN, KLEIN, GANTMAN, PANELLA, and DONOHUE, JJ.

1. We recognize that Mrs. Vanaman is now deceased, and Mr. Vanaman has continued this action in his own right and as executor of Mrs. Vanaman's estate. However, for the ease of discussion, we shall continue to refer to the Vanamans as the plaintiffs/appellants.

2. The Vanamans sued numerous other companies; however, the claims against the remaining defendants were either dismissed or otherwise settled and are not at issue in the case *sub judice.*

OPINION BY STEVENS, J.:

¶1 Following settlement and the entry of judgment on September 13, 2006, with regard to the last remaining defendant in a mass asbestos products liability action, Appellant Robert Vanaman, as Executor of the Estate of his wife, Violet Vanaman, and in his own right, presents challenges to the orders entered in the Court of Common Pleas of Philadelphia County granting summary judgment in favor of two manufacturers, Crown Cork & Seal Company (hereinafter Crown Cork), and DAP, Inc. (hereinafter DAP). We affirm.

¶2 The relevant facts and procedural history are as follows: On November 29, 2004, Violet and Robert Vanaman[1] filed a complaint against Appellees Crown Cork and DAP[2] alleging Mrs. Vanaman contracted mesothelioma[3] as a result of exposure to asbestos products, which were manufactured by Crown Cork and DAP. Specifically, the Vanamans contended that Mr. Vanaman worked at Atlantic Refinery from 1948 to 1961 and Sun Oil from 1961 to 1987, and Mrs. Vanaman inhaled fibers from Mr. Vanaman's work clothes. They alleged Mrs. Vanaman was also exposed to asbestos when the Vanamans conducted home repairs; however, they admitted that, from 1949 to 1993, Mrs. Vanaman smoked approximately one pack of cigarettes per day.

¶3 On July 19, 2006, Appellees filed motions for summary judgment. Specifically, Crown Cork, who once owned the

3. We note that "mesothelioma is a cancer of the mesothelial tissue surrounding the lung, which is a rare disease with the exception of those exposed to asbestos." *Gutteridge v. A.P. Green Services, Inc.,* 804 A.2d 643, 652 (Pa.Super.2002) (quotations, quotation marks, and citation omitted). Therefore, Mrs. Vanaman died from a disease which is medically attributable specifically to exposure to asbestos or asbestine products. *See id.*

Mundet Cork Company (Mundet Cork), which operated an asbestos insulation business, did not contest that Mrs. Vanaman was exposed to asbestos from a Mundet Cork product.[4] However, Crown Cork sought summary judgment on the basis the Vanamans' claims were barred by 15 Pa.C.S.A. § 1929.1,[5] 42 Pa.C.S.A. § 5502,[6] and 42 Pa.C.S.A. § 5524. 1.[7] On the other hand, DAP alleged there was no evidence that Mrs. Vanaman inhaled the fibers of any asbestos-containing product, which was manufactured or sold by DAP.

¶ 4 The Vanamans filed responses to the motions for summary judgment, and the trial court entered summary judgment orders in favor of Appellees.[8] This timely appeal followed, and the Vanamans were ordered to file a Pa.R.A.P.1925(b) statement. The Vanamans timely complied, and the trial court filed a Pa.R.A.P.1925(a) opinion.[9] Thereafter, this Court *sua sponte* listed this case for *en banc* consideration.

Pennsylvania law provides that summary judgment may be granted only in

---

4. On February 7, 2002, Crown Cork filed a global summary judgment motion in the trial court requesting dismissal as to all cases then pending in which the plaintiffs sought damages for asbestos-related injuries due to exposure from Mundet Cork products. Specifically, Crown Cork sought summary judgment pursuant to 15 Pa.C.S.A. § 1929.1 and the trial court granted the order. However, in *Ieropoli v. AC&S Corporation*, 577 Pa. 138, 842 A.2d 919 (2004), the Supreme Court held that 15 Pa.C.S.A. § 1929.1 was unconstitutional under the Remedies Clause (Article I, Section 11) because it extinguished existing causes of action. Thereafter, the legislature enacted 42 Pa.C.S.A. § 5524.1(b) to correct the Remedies Clause violation. Specifically, Section 5524.1(b) states that the Statute does not bar claims where the statute of limitations commenced on or before the Statute's effective date. In the case *sub judice*, there is no disputed Remedies Clause violation. Moreover, we note that, in response to the enactment of Section 5524.1(b), Crown Cork filed another global summary judgment motion as to all asbestos cases in which suit was filed after December 17, 2003, and by order filed on July 29, 2005, the trial court granted the summary judgment motion. Thereafter, Crown Cork filed the instant summary judgment motion as to the Vanamans, as well as other plaintiffs, including Bruce Johnson (Administrator of the Estate of Thornton Johnson), Dorothy Mauger (Executrix of the Estate of Russell Mauger), Dolores Stea (Administratix of the Estate of Joseph Sea and in her own right), and Jon and Lois Burger, whose appeals are being decided in separate *en banc* opinions.

5. 15 Pa.C.S.A. § 1929.1 limits the asbestos-related liability of Pennsylvania corporations when that liability arises from a merger or consolidation. In general, the Statute caps the successor corporation's asbestos-related liability at the fair market value of the prior company as of the time of the merger or consolidation. In the case *sub judice*, due to Crown Cork's purchase of Mundet Cork, Crown Cork has paid hundreds of millions of dollars in asbestos-related claims, the value of which fair exceeds the fair market value of Mundet Cork. Therefore, Crown Cork's liability is limited by Section 1929.1 in this case.

6. 42 Pa.C.S.A. § 5502 sets forth the method of computing periods of limitation generally.

7. 42 Pa.C.S.A. § 5524.1 sets forth, in relevant part, that "[t]he limitations set forth in 15 Pa.C.S.A. § 1929.1(a) and (b) (relating to limitations on asbestos-related liabilities relating to certain mergers or consolidations) shall not apply to an asbestos claim for which the applicable period of limitation commenced on or before December 17, 2001."

8. The Vanamans filed an appeal immediately from the entry of summary judgment in favor of Crown Cork; however, this Court quashed the appeal as being interlocutory.

9. In its Pa.R.A.P.1925(a) opinion, the trial court explained the reasons summary judgment was granted with regard to DAP. Regarding the constitutional challenges to the statutes limiting Crown Cork's liability, the trial court relied on its opinion in *Johnson v. American Standard*, 966 A.2d 573, 2009 WL 281177 (Pa.Super.2007) *(en banc)*, which has been addressed in a separate *en banc* Opinion.

those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted).

¶ 5 Regarding the entry of summary judgment in favor of Crown Cork, the Vanamans allege the following: (1) The trial court improperly granted summary judgment in favor of Crown Cork since 15 Pa.C.S.A. § 1929.1 is unconstitutional in that it created a one-member, closed class in violation of Pennsylvania's Equal Protection Clause, Article III, § 32, and is discriminatory as to other corporations; and (2) The trial court improperly granted summary judgment in favor of Crown Cork since 15 Pa.C.S.A. § 1929.1 interferes with the Commerce Clause and protects in-state corporations at the expense of out-of-state corporations, which do business in Pennsylvania. We conclude the Vanamans lack standing to raise these constitutional challenges.

¶ 6 As discussed *supra*, Crown Cork filed a motion for summary judgment in another case, *Johnson v. American Standard*, 966 A.2d 573, 2009 WL 281177 (Pa.Super.2009) *(en banc)*, for which an Opinion has been filed by the present *en banc* panel. Writing for the Majority, our esteemed colleague, the Honorable Maureen Lally–Green, has explained that an appellant must have standing to challenge whether 15 Pa.C.S.A. § 1929.1 is unconstitutional as applied to Crown Cork. For the reasons discussed in *Johnson*, we conclude that the Vanamans in the case *sub judice* lack standing to raise their constitutional challenges and we decline to address the constitutional issues further.[10]

¶ 7 The Vanamans remaining claims relate to the trial court entering summary judgment in favor of DAP on the basis the Vanamans did not present evidence estab-

---

**10.** We note that the Vanamans claim the trial court erred in concluding the coordinate jurisdiction rule prevented the court from revisiting issues concerning the constitutionality of 15 Pa.C.S.A. § 1929.1. Assuming, *arguendo*, the Vanamans are correct, we conclude that no relief is due since the Vanamans have not demonstrated they have standing to raise their constitutional issues.

lishing a genuine issue of material fact as to product identity and/or exposure to asbestos.

To survive a motion for summary judgment in an asbestos case, a plaintiff must meet the following standard:

> In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper [as to the manufacturer] when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury.
>
> Whether direct or circumstantial evidence is relied upon, our inquiry, under a motion for summary judgment [filed by a manufacturer], must be whether plaintiff has pointed to sufficient material facts in the record to indicate that there is a genuine issue of material fact as to the causation of decedent's disease by the product of each particular defendant.

*Gutteridge*, 804 A.2d at 652 (quotations, quotation marks, and citations omitted). *See Donoughe v. Lincoln Electric Co.*, 936 A.2d 52 (Pa.Super.2007) (holding that, in a products liability case involving asbestos exposure, a plaintiff must present evidence he inhaled asbestos fibers shed by the defendant's product).

¶ 8 Moreover, with regard to causation, in *Gregg v. V–J Auto Parts Company*, 596 Pa. 274, 943 A.2d 216 (2007), our Supreme Court explained the appropriate application of the "frequency, regularity, and proximity" criterion to asbestos product cases at the summary judgment stage. Specifically, the Supreme Court held that, in a products liability suit brought against a manufacturer or supplier of a product containing asbestos, in order to survive summary judgment, a plaintiff must meet the "frequency, regularity, and proximity" test, even if the plaintiff presents direct evidence of inhalation.[11] In so holding, the Supreme Court stated the following:

> We appreciate the difficulties facing plaintiffs in this and similar settings, where they have unquestionably suffered harm on account of a disease having a long latency period and must bear a burden of proving specific causation under prevailing Pennsylvania law which may be insurmountable. Other jurisdictions have considered alternate theories of liability to alleviate the burden. Such theories are not at issue in this case, however, and we do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation. . . . The result, in our view, is to subject defendants to full joint-and-sev-

---

**11.** Following *Gregg*, in *Tarzia v. American Standard*, 952 A.2d 1170 (Pa.Super.2008) (*en banc*), this Court examined whether the entry of summary judgment in favor of a manufacturer was proper. In concluding the plaintiff failed to demonstrate that he was exposed to asbestos from the manufacturer's brake shoes, this Court stated, "In *Gregg*, the Su-

preme Court essentially adopted the *Eckenrod [v. GAF Corp.]*, [375 Pa.Super. 187] 544 A.2d 50 (Pa.Super.1988), test in determining whether a person has been exposed to asbestos, frequency, regularity, and proximity must be considered." *Tarzia*, 952 A.2d at 1171 (footnote omitted).

eral liability for injuries and fatalities in the absence of any reasonably developed scientific reasoning that would support the conclusion that the product sold by the defendant was a substantial factor in causing the harm.

In summary, we believe that it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury.

*Gregg,* 596 Pa. at 291–92, 943 A.2d at 226 (citations and footnotes omitted).

¶ 9 Regarding the entry of summary judgment in favor of DAP, we examine the relevant portions of Mr. Vanaman's deposition testimony:

BY MR. KADISH:

Q: The next name that you have a check mark next to is DAP, Inc. Why did you put a check mark there?

A: I'm familiar with the name.

Q: Do you associate that name with any type of product?

A: They made a lot of products. Seals of some kind.

Q: What kind of seals are you referring to?

A: I don't know.

Q: Do you associate the name DAP with any location where you lived or any place where you worked?

A: I have tubes of DAP in my garage as a sealer. I'm not sure whether—I don't know. I can't say. I don't know whether they had asbestos in them or not.

Q: Have you used any of this DAP sealer product?

A: Yeah. I always used it.

Q: What does it look like?

A: In a tube. A caulk type of thing.

Q: Does the use of that product create dust?

A: There's another use too, but I don't remember what it is.

Q: When you use the sealer products does that create any dust?

A: No.

* * *

Q: You told Mr. Kadish earlier that you would use tubes of DAP to caulk around windows, and baths, and things like that?

MR. RYAN: Objection, leading.

THE WITNESS: Yes.

BY MR. PRESENT:

Q: Do you know one way or another whether any of the caulk contained asbestos? Did you ever read the label to see?

A: I don't know.

Q: When did you first start using DAP caulk? Can you tell me around when that was?

A: Probably in the 60's or 50's maybe. Late 50's or 60's.

Q: After you would put that caulk down, did you ever have to take it up or replace it?

A: Tub caulk, yeah.

Q: Would any of that caulk either crack or dry up before you would remove it?

A: It dried to some extent.

Q: Would that include this DAP caulk?

A: Yes. I would only remove it if it was pulling away from the wall or tub.

Q: When you would do this kind of work, did Mrs. Vanaman ever assist you? Did she ever help in terms of

doing any of this bathroom work around the tub and stuff?

A: No. She didn't. Bathrooms are pretty small. Another instance I might have used it is in doing a kitchen. I put tile in back of the sink and around the edge of the counter top, and I grouted with a material. I didn't have to sand that. I scraped that off.

Q: Did you make some dust when you did that?

A: Probably in mixing it, yes. Take it from a dry state and make a paste of it.

Q: Did Mrs. Vanaman help you in the kitchen on that project?

A: Yes.

Q: So, would she be exposed to that dust as well?

MR. RYAN: Objection, leading.

BY MR. PRESENT:

Q: Would the dust be in her vicinity as well?

A: Yes. Minimally, but yes.

MR. PRESENT: That's all I have.

Deposition of Robert Vanaman, dated May 22–24, 2006, at 156–157, 534–535.

¶ 10 Based on the aforementioned deposition testimony, DAP filed its summary judgment motion on the basis that there was no evidence that Mrs. Vanaman inhaled asbestos from a product, which was manufactured by DAP.

¶ 11 In their opposition to DAP's summary judgment motion, the Vanamans admitted that, based on Mr. Vanaman's depo-

sition testimony, it was unclear whether Mrs. Vanaman was exposed to asbestos from a DAP product. However, the Vanamans attached to their motion in opposition an affidavit from Mr. Vanaman, which stated the following:

> ROBERT VANAMAN, being duly sworn upon his oath deposes and says:
>
> 1. He had been made aware of the motions for summary judgment filed by various defendants and wishes to clarify testimony which he would have given at deposition if asked.
>
> 2. He recalls exposure to the products of DAP checked off on the attached list.

¶ 12 The Vanamans also attached two exhibits, on which Mr. Vanaman indicated he had used DAP White Caulking Compound, DAP Bowl Setting Compound, DAP Butyl Gutter and Lap Sealer, and DAP Rely–On Roof Cement.[12] The exhibits revealed that the products contained asbestos prior to 1977.

¶ 13 The trial court determined that Mr. Vanaman's deposition failed to create a genuine issue of material fact as to whether (1) the DAP product used by Mr. Vanaman contained asbestos or (2) Mrs. Vanaman was exposed to dust from any DAP product. With regard to Mr. Vanaman's affidavit and the accompanying lists of products, the trial court indicated it would not consider such since they were not "wholly credible."[13] Trial Court Opinion

---

12. The exhibit on which Mr. Vanaman circled "DAP White Caulking Compound, DAP Bowl Setting Compound, and DAP Butyl Gutter and Lap Sealer" is entitled "List of Products with Asbestos Fiber Made in San Jose Prior to 1977." The exhibit on which Mr. Vanaman circled "DAP Rely–On Roof Cement" is dated July 15, 1977, and entitled "Departmental Correspondence." This exhibit indicated all plants were to implement the removal of as-

bestos from the DAP Rely–On Cement by August 30, 1977.

13. This Court has held that a non-moving party may file an affidavit in order to supplement the record in order to avoid the entry of summary judgment. *See Stephens v. Paris Cleaners, Inc.,* 885 A.2d 59 (Pa.Super.2005); *Gruenwald v. Advanced Computer Applications, Inc.,* 730 A.2d 1004 (Pa.Super.1999); *Lucera v. Johns–Manville Corp.,* 354 Pa.Super.

filed 4/17/07 at 6. In the alternative, the trial court noted that, even if it considered the affidavit and exhibits, the Vanamans failed to "establish [Mrs. Vanaman's] exposure to asbestos fibers from a DAP product because [the Vanamans] failed to put [Mrs. Vanaman] in the vicinity of the dust created by a DAP product." Trial Court Opinion filed 4/17/07 at 6.[14] Assuming, *arguendo*, the trial court should have considered the affidavits and attached lists, we conclude the Vanamans did not establish a genuine issue of material fact regarding causation.

¶ 14 Here, Mr. Vanaman initially testified at his deposition that, when he used the DAP caulk, it did not create dust. Later in his testimony, he indicated that he used the caulk in the bathroom and, after it had hardened and pulled away from the tub or wall, he would replace the caulk. Mr. Vanaman did not indicate that the removal of the caulk in the bathroom created any dust, and in any event, he specifically testified that Mrs. Vanaman was not present when Mr. Vanaman did the work in the bathrooms. Mr. Vanaman also indicated that he grouted kitchen tiles with a material, which may have been DAP's caulk. He indicated that when he grouted the tile, he produced some dust when he mixed the dry material and made a paste out of it. Although he did not explain with any detail Mrs. Vanaman's participation, Mr. Vanaman indicated that Mrs. Vanaman helped with the kitchen project. When asked if she was exposed to dust from the tiling of the area behind the kitchen sink and along the countertop,

Mr. Vanaman indicated, "Yes. Minimally, but yes." Deposition of Robert Vanaman, dated May 22–24, 2006, at 535.

¶ 15 Even assuming the material with which Mr. Vanaman worked in the bathroom and kitchen was a DAP product containing asbestos, we conclude that the Vanamans did not present a genuine issue of material fact as to causation under *Gregg*. In consideration of the "frequency, regularity, and proximity" test discussed in *Gregg*, it is clear that Mrs. Vanaman was, at most, casually or minimally exposed to DAP's product when she assisted with the tiling of the Vanamans' kitchen. This very minimal exposure is insufficient to implicate a fact issue concerning the substantial-factor causation necessary for liability. *Id.* Simply put, while there is no doubt Mrs. Vanaman was exposed to asbestos sometime during her lifetime, and that exposure caused her illness, the Vanamans have not presented evidence that links her asbestos exposure to DAP. *See Gregg, supra; Tarzia, supra.*

¶ 16 For all of the foregoing reasons, we affirm.

¶ 17 Affirmed. Appellant's Motion to Supplement the Brief is Granted.

¶ 18 KLEIN, J. files a Concurring and Dissenting Opinion in which MUSMANNO, PANELLA and DONOHUE, JJ. join.

## CONCURRING AND DISSENTING OPINION BY KLEIN, J.:

¶ 1 While I agree with the majority regarding the disposition of the DAP aspect of this matter, in accordance with my pre-

520, 512 A.2d 661 (1986). However, the trial court may then properly disregard the affidavit on the basis it is not "wholly credible" if the affidavit contains information which is inherently incredible. *See id.*

14. The trial court noted that, in order to overcome the lack of evidence Mrs. Vanaman was exposed to dust from a DAP product, the Vanamans attached to their motion in opposition to the entry of summary judgment affidavits from Drs. Girard and Frank. However, since the affidavits were completely illegible, the trial court refused to consider them. Trial Court Opinion filed 4/17/07 at 6.

viously stated position regarding standing and the constitutionality of the Crown Cork and Seal Act, 15 Pa.C.S. § 1929.1, I must dissent.

¶ 2 Because I have extensively put forth my views on standing and the constitutionality of the Crown Cork and Seal Act in companion cases *Johnson v. American Standard,* 966 A.2d 573, 2009 WL 281177 (Pa.Super.2009) (*en banc*) and *Burger v. Owens–Illinois,* 966 A.2d 611, 2009 WL 325543 (Pa.Super.2009), I will not burden the reader with a complete reiteration. I refer interested parties to those decisions for a full discussion of my position.

¶ 3 Briefly, I believe the plaintiffs have standing to challenge the constitutionality of the statute because application of the statute prevents the Vanamans from seeking full satisfaction for their injuries as is guaranteed by the Pennsylvania Constitution, Art.1, § 11. The Vanamans are prevented from seeking their full remedy because the statute gives Crown Cork and Seal a favored economic status over any similarly situated foreign corporation. Thus, although not directly affected by the statute, their zone of interest is substantial enough to provide standing.

¶ 4 Related to the above, the statute violates the Commerce Clause of the United States Constitution, Art. 1, cl.3, because it represents a regulatory measure designed to benefit in-state economic interest by burdening out-of-state competitors. *See Office of Disciplinary Counsel v. Marcone,* 579 Pa. 1, 855 A.2d 654, 666 (2004). Under the statute, out-of-state corporations are forced to bear the burden of successor liability as it relates to asbestos litigation while Pennsylvania corporations are exempt.

¶ 5 Further, I believe the statute violates equal protection as found at U.S. Const., Amend. 14 and Pa. Const., Art. 1, § 26, by carving out a sub-class of defendants, consisting of a single Pennsylvania corporation, which is subject to the payment of damages through successor liability. Further, it improperly carves out a sub-class of defendants who are subject to successor liability in asbestos cases from a general class of defendants which are subject to successor liability in general.

¶ 6 The statute also prevents plaintiffs from seeking redress from a defendant based upon the arbitrary date upon which symptoms of the disease manifest. A person who exhibited symptoms before a certain date is allowed to seek damages from Crown Cork while a person who showed delayed symptoms is not allowed to seek damages. A plaintiff may be prevented from his or her day in court simply because he or she had, what would otherwise seem to be, the good fortune to not get immediately sick.

¶ 7 For the above reasons, more fully set forth in my separate writings in *Johnson v. American Standard* and *Burger v. Owens–Illinois,* I believe that the Vanamans have standing and that the Crown Cork Statute violates the requirements of equal protection under both the United States and Pennsylvania Constitutions and the Commerce Clause of the United States Constitution. Therefore, I must dissent.