J-S31011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT REITER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY HENDRICKS, D/B/A | : | |
| HENDRICKS INVESTMENTS | : | |
| | : | No. 1679 MDA 2019 |
| Appellant | : | |

Appeal from the Judgment Entered September 26, 2019
In the Court of Common Pleas of Centre County Civil Division at No(s):
2017-1053

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 13, 2020**

Rodney Hendricks, d/b/a Hendricks Investments ("Hendricks"), appeals from the judgment entered against him and in favor of Robert Reiter ("Reiter") in this dispute concerning a rental property.  Specifically, Hendricks challenges the trial court's March 19, 2019 order granting in part Reiter's motion for summary judgment, and its September 17, 2019 order striking Hendricks's amended answer and providing that Reiter is entitled to judgment in the amount of $14,025.  Also before us is a motion for costs and fees filed by Reiter.  Upon review, we vacate the judgment, reverse the challenged portions of the orders, deny Reiter's motion for costs and fees, and remand for further proceedings consistent with this memorandum.

The underlying facts are as follows, largely taken from the affidavit of Hendricks.[1]   **See** Affidavit of Rodney Hendricks (appended to Brief in Opposition to Motion for Summary Judgment, 2/6/19).  Hendricks owns and manages several residential properties in State College, Pennsylvania.  Each fall, prospective tenants register to receive information about available properties.  Thereafter, Hendricks opens rental biding for the following school year.  Once a bid is accepted as to any particular property, the property is removed from Hendricks's marketing efforts.  This is significant because the most desirable prospective tenant groups typically secure their following-year accommodations promptly, leaving only less-qualified groups in November and thereafter.

Reiter and six associates, who apparently were fellow Penn State students, submitted bids on three houses, one of which was a large house at 142 McAllister Street for which Hendricks received five bids.  Hendricks accepted the bid of Reiter's group, and advised them of their obligation to submit an application and fees of $75 per applicant, to provide copies of their drivers' licenses, and to pay a deposit equal to one month's rent to secure the property by October 10, 2016.  Hendricks also provided them with a sample

---

[1] Given the procedural posture of the case, we must view the evidence of record in the light most favorable to Hendricks.  **See**, **e.g.**, **In re Risperdal Litig.**, 223 A.3d 633, 639 (Pa. 2019) (providing that summary judgment must be decided viewing the evidence in the light most favorable to the non-moving party).

lease and sample rules and regulations, and directed them to a website to obtain the rental application and parental guaranty forms.

One of the initial documents concerning the application process advised the group:

> *** Please note: By securing the house and taking it off the market, we are making a commitment to you.  As per your application, all monies paid will be forfeited if you would back out.  Do NOT secure a property unless you are 100% certain this is the property you want!!!!

Brief in Opposition to Motion for Summary Judgment, 2/6/19, at page 2 of Exhibit D-3.  Another document, signed and dated by Reiter, reiterated: "If for any reason you back out of the leasing process you will forfeit all monies paid, including application fee(s), one month's rent, and any other monies paid applicable to the leased premises.  **THE SAME INFORMATION IS IN YOUR RENTAL APPLICATION**."  *Id*. at page 1 of Exhibit D-2 (emphasis in original).  The paperwork distinguished between this initial application deposit and the security deposit that would subsequently become due if the application was approved and the lease executed.  *See id*. at page 1 of Exhibit D-3.

Reiter proceeded to sign the application, acknowledging the following therein: "**I understand that by signing this application, I am legally bound to sign the lease for the above-mentioned property.  If I do not sign the lease, all monies paid (fees/payments, etc.) will be forfeited**

**and are non-refundable.**" ***Id***. at page 2 of Exhibit D-6 (emphasis in original). The application further explained:

> If I refuse to execute such a lease, Owner will make reasonable efforts to relet the premises on my behalf. If [O]wner is successful, I understand and agree that said **payment**, (**which does not constitute a security deposit**), will be forfeited and retained as liquidated damages by Owner for his efforts in processing this application, holding the premises open on my behalf pending approval of this application, and making the necessary investigation of my character and reputation.

***Id***. (emphasis in original).

Reiter submitted the application on October 9, 2016, along with $5,200, representing a $525 application fee ($75 per applicant) and a $4,675 deposit. Several weeks later, Reiter's father contacted Hendricks's office to negotiate the lease terms and finalize the lease. However, Reiter and his group did not comply with their remaining obligations. They did not submit parental guarantees for all tenants and did not pick up the lease document for execution, prompting a reminder from Hendricks that the deposit would be forfeited if the group did not sign the lease.

In mid-November 2016, Reiter and his group informed Hendricks that they had decided not to proceed with the rental. Specifically, they claimed that "their group had fallen apart." Affidavit of Rodney Hendricks at ¶ 20. Hendricks advised them that he was willing to allow them to find replacements to avoid forfeiting the deposit. On December 1, 2016, another member of Reiter's group contacted Hendricks and acknowledged that the group would be forfeiting the deposit. However, on December 2, 2016, Reiter advised

Hendricks that they had spoken to an attorney that day who advised the group that they "had a strong case against your lease which would void the contract that we signed in the application." *Id*. at ¶ 23 (emphasis omitted). The group neither signed the proposed lease nor suggested modifications.

Hendricks refused to return Reiter's money, citing the rental application's provision that all funds paid would be forfeited if the applicants backed out. Litigation began at the magisterial district judge, where Reiter obtained a default judgment and an award of $12,000. Hendricks appealed, and Reiter filed a complaint claiming that Hendricks violated the Landlord Tenant Act ("LTA") by refusing to return the security deposit; that the lease Hendricks offered to Reiter and his associates included fees and fines prohibited by the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") as acknowledged by Hendricks in an Assurance of Voluntary Compliance ("AVC") that he executed with Pennsylvania's Office of Attorney General in 2016;[2] and common law fraud. *See* Complaint, 4/7/17, at ¶¶ 20-41. After Hendricks filed an answer and new matter, the case proceeded to compulsory arbitration, which resulted in judgment in favor of Hendricks. *See* Award of Arbitrators, 2/13/18. Reiter appealed to the court of common pleas.

---

[2] *See* Praecipe to Attach Exhibits, 7/6/18, at Exhibit D.

With leave of court, Reiter filed an amended complaint, restating his LTA, UTPCPL, and fraud claims, and adding a count for unjust enrichment. *See* Amended Complaint, 6/1/18, at ¶¶ 19-46. Following the resolution of preliminary objections,[3] Hendricks filed a responsive pleading contending, *inter alia*, that Reiter did not have standing to enforce the AVC, that Reiter otherwise failed to allege a valid UTPCPL claim, and that Reiter was using the AVC as a pretext to excuse his breach of the application agreement. *See* Answer, New Matter and Counterclaim, 10/8/18, at ¶¶ 17-20, 33-40.

Following discovery, Reiter moved for summary judgment, contending that there was no dispute of material fact that his deposit was a security deposit under the LTA that had to be returned in the absence of actual damages, and that Hendricks suffered no damages, as Reiter and his associates never took possession of the property and Hendricks was able to rent it to other tenants at the same rate.[4] *See* Motion for Summary Judgment,

---

[3] These included the objections that Reiter did not attach to the amended complaint, or the prior complaint, the documents referenced therein, such as the purported lease contract at issue and the AVC that Hendricks signed. Reiter remedied the deficiency by filing documents by praecipe. *See* Praecipe to Attach Exhibits, 7/6/18. However, as discussed *infra*, the attached lease is a generic sample lease, not one specific to the parties in this case.

[4] Notably, in contrast to other facts Reiter included in a "statement of undisputed facts," Reiter proffered no evidence to support the allegation that Hendricks "was able to rent the property to a third party." Motion for Summary Judgment, 12/28/18, at 16.

12/28/18, at ¶¶ 15-18. Hendricks opposed the motion, *inter alia*, on the bases that there were disputes of material facts and that Reiter's UTPCPL claim failed because he lacked standing to enforce the AVC. **See** Response to Motion for Summary Judgment, 2/6/19, at unnumbered 2.

Initially, the trial court granted Reiter's motion as to his claim under the LTA but denied it as to the UTPCPL and unjust enrichment claims.[5] **See** Opinion and Order, 3/19/19, at 4-5. Hendricks moved for reconsideration on several bases. The trial court denied reconsideration as to most claims, but agreed that the existence of an express contract rendered unjust enrichment inapplicable, and struck that count. **See** Opinion and Order, 5/1/19.

After the summary judgment rulings, Hendricks sought and obtained leave to file an amended answer and new matter with counterclaims. Therein, Hendricks clarified his contentions that the parties had not entered into an agreement governed by the LTA, but only an agreement to reach such an agreement. Hendricks also alleged several breach-of-contract counterclaims, alluded to but not explicitly pled in his original answer, contending that not only did Reiter forfeit the money paid, but that Hendricks sustained additional damages related to securing replacement tenants. **See** Amended Answer,

---

[5] Hendricks contends on appeal that the trial court dismissed Reiter's UTPCPL claim with its March 19, 2019 order. **See** Hendricks's brief at 5, 46-47. That is incorrect. The trial court merely denied Reiter's motion for judgment as a matter of law in his favor on that claim, it did not dismiss it. **See** Opinion and Order, 3/19/19, at 4-5.

New Matter and Counterclaim, 7/12/19, at ¶¶ 110-144. Reiter filed a motion to strike Hendricks's amended pleading, arguing that he was prejudiced by the timing and substance of the claims, as Hendricks offered no explanation why he could not have raised them before discovery closed and summary judgment was decided. *See* Motion to Reconsider, 7/17/19, at ¶¶ 14-24. The trial court granted Reiter's motion, striking the amended answer and new matter and reinstating Hendricks's prior one. The court opined that even if Hendricks was correct that the retained deposit was not a security deposit governed by the LTA, the forfeiture provision was an unconscionable penalty rather than a permissible liquidated damages clause. *See* Opinion and Order, 9/17/19, at 3-4. The court further ruled that its holding, in concert with the prior summary judgment ruling, resolved all issues as to all parties and warranted the cancellation of trial and the entry of judgment in favor of Reiter in the amount of $14,025 as "the agreement between the parties was a lease allowing for a security deposit under the [LTA]."[6] *See* Opinion and Order, 9/17/19, at 4-5.

Thereafter, Hendricks filed this timely appeal. Hendricks complied with the trial court's order to file a concise statement of errors complained of on

_____

[6] It is unclear from our review of the record how Reiter's common law fraud claim was resolved. However, from the trial court's September 17, 2019 order and the entry of judgment upon it, it appears that the fraud claim does not remain pending. Accordingly, we exercise jurisdiction pursuant to Pa.R.A.P. 341(a).

appeal pursuant to Pa.R.A.P. 1925(b). The trial court provided a Pa.R.A.P. 1925(a) opinion that directed us to its previously-issued opinions, but also indicated the diametrically-opposed finding that the agreement between the parties was not a lease, but that its judgment was proper based upon the unconscionability of the forfeiture provision of the application contract. *See* Opinion and Order, 12/3/19, at 3-6.

Hendricks presents the following questions for this Court's consideration:

I.      Whether summary judgment was entered in error to establish a landlord-tenant relationship when genuine issues of material fact were in dispute?

    A.      The well pleaded material facts and material record facts are in dispute which precludes entry of a summary judgment.

    B.      The well pleaded facts do not support the determination by the lower court that "there was a meeting of the minds by the parties."

    C.      The material record facts establish that the parties, contrary to the lower court's determination, did not intend to establish a landlord-tenant relationship absent an executed, written lease agreement and satisfaction of lease application requirements including submission of all parental guarantees and final deposit.

    D.      The parties' communications and [Hendricks]'s business records confirm that the parties intended that the landlord-tenant relationship shall be confirmed with the execution of a lease agreement after [Reiter] fully complied with lease application conditions. The execution of a written lease agreement was not a mere "formality" - it was a step to create a contractual relationship.

- 9 -

   E.  The Courts have distinguished a preliminary lease discussion from a final agreement to establish a landlord and tenant relationship.

   F.  The lease application documents establish an agreement to act in good faith to pursue a written lease agreement. The lower court erred as a matter of law when it applied the [LTA] and not common law contract principles and remedies.

  II.  Whether the lower court erred when it found that a lease application deposit was a "security deposit"?

  III.  Did the lower court commit fundamental error when it denied [Hendricks]'s right to establish damages by counterclaim?

  IV.  Did the lower court err in awarding a monetary judgment of $14,025, treble the amount of the application deposit of $4,675?

   A.  The [UTPCPL] claim had been dismissed on March 19, 2019.

   B.  The penal provision of section 512 of the [LTA] is not applicable.

  V.  Whether the lower court erred when it determined that the liquidated damage provision in the lease application was an impermissible windfall without any evidence to support such a finding?

Hendricks's brief at 4-5 (cleaned up).

We begin with our standard of review.

An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to

the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. Because the issue here, namely whether there are genuine issues of material fact, is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*In re Risperdal Litig.*, 223 A.3d 633, 639 (Pa. 2019) (cleaned up).

Rather than separately address each of Hendricks's questions *seriatim*, we deem it more efficient to examine the overarching issues that control our resolution of this case. Specifically, Reiter argued three bases for summary judgment in his favor: (1) the $4,675 that he paid to Hendricks in accordance with the rental application was a security deposit that could not be withheld in the absence of actual damages pursuant to § 512 of the LTA; (2) the lease Hendricks presented to Reiter and his group for the rental of 142 McAllister Street contained provisions that violated the UTPCPL as explained in the AVC; and (3) because Reiter rescinded his offer to rent the property upon discovering that the proposed lease "was unlawful," Hendricks would be unjustly enriched by retention of the application deposit. *See* Brief in Support of Motion for Summary Judgment, 12/28/18, at 6-13. The trial court dismissed the unjust enrichment claim, and Reiter has not appealed that ruling. Hence the primary issue before us is whether, viewing the record evidence in the light most favorable to Hendricks as the non-moving party, it is clear and free from doubt that Reiter is entitled as a matter of law to a treble-damages judgment in the amount of $14,025 pursuant to the LTA and/or the UTCPCL. For the reasons that follow, we hold that it is not.

- 11 -

First, Reiter's claim that the money he gave to Hendricks in connection with his application was a security deposit that had to be refunded pursuant to § 512 of the LTA is both contrary to the plain language of the application that Reiter signed and unsupported by the language of the LTA. By way of background, the LTA provides that, in the first year of a residential lease, a landlord may not require "for the payment of damages to the leasehold premises and/or default in rent thereof" a security deposit in excess of two months' rent. 68 P.S. § 250.511a(a). In seeking summary judgment, Reiter relied upon § 512 of the LTA, which provides as follows regarding such deposits:

> (a) Every landlord shall **within thirty days of termination of a lease or upon surrender and acceptance of the leasehold premises, whichever first occurs**, provide a tenant with a written list of any damages to the leasehold premises for which the landlord claims the tenant is liable. Delivery of the list shall be accompanied by payment of the difference between any sum deposited in escrow, including any unpaid interest thereon, for the payment of damages to the leasehold premises and the actual amount of damages to the leasehold premises caused by the tenant. **Nothing in this section shall preclude the landlord from refusing to return the escrow fund**, including any unpaid interest thereon, for nonpayment of rent or **for the breach of any other condition in the lease by the tenant**.
>
> (b) Any landlord who fails to provide a written list within thirty days as required in subsection (a), above, shall forfeit all rights to withhold any portion of sums held in escrow, including any unpaid interest thereon, or to bring suit against the tenant for damages to the leasehold premises.
>
> (c) If the landlord fails to pay the tenant the difference between the sum deposited, including any unpaid interest thereon, and the actual damages to the leasehold premises caused by the tenant within thirty days after termination of the lease or surrender and

- 12 -

acceptance of the leasehold premises, the landlord shall be liable in assumpsit to double the amount by which the sum deposited in escrow, including any unpaid interest thereon, exceeds the actual damages to the leasehold premises caused by the tenant as determined by any court of record or court not of record having jurisdiction in civil actions at law. The burden of proof of actual damages caused by the tenant to the leasehold premises shall be on the landlord.

(d) Any attempted waiver of this section by a tenant by contract or otherwise shall be void and unenforceable.

68 P.S. § 250.512 (emphases added).

In its various opinions and orders, the trial court took inconsistent positions as to the nature of the contract between the parties. **Compare** Opinion and Order, 3/19/19, at 3-4 (indicating that the parties had reached a meeting of the minds as to a lease agreement which "merely awaited the formality of being reduced to writing"), **with** Opinion and Order 12/3/19, at 3 (opining that the parties had not reached a final lease agreement, but "merely understandings to complete performance at a future date"). Nonetheless, it consistently maintained that, regardless of whether the parties had entered into a lease agreement or merely an agreement to enter into a lease agreement, the deposit Reiter had paid was a security deposit within the meaning of § 512 of the LTA, and Hendricks violated that section when he

kept the security deposit without providing a list of actual damages.[7]  Opinion and Order, 3/19/19, at 4.

We disagree.  The express terms of the parties' contract indicate that the application deposit given to Hendricks was not a "security deposit."  **See** Brief in Opposition to Motion for Summary Judgment, 2/6/19, at page 2 of Exhibit D-6 (indicating that the application deposit "**does not constitute a security deposit**" (emphasis in original)).  The contract did provide that, if Hendricks approved the application and Reiter and his group executed a subsequent lease, the application deposit would be applied to the last months' rent.  However, the writings exchanged by the parties indicate that after the lease was executed, Reiter and his group would be required to submit a "security deposit" above and beyond the prior deposit.

Nonetheless, even assuming *arguendo* that Reiter's deposit was a security deposit subject to the requirements of § 512 of the LTA, the record at summary judgment does not support a finding that Hendricks violated § 512.  As emphasized above, § 512(a) requires the landlord to make any necessary return of a security deposit "within thirty days of termination of a

---

[7] The trial court does not explain its basis for trebling the damages when it entered judgment.  As indicated above, § 512(c) of the LTA allows for the double return of a wrongfully-withheld deposit.  While the UTPCPL provides the option of treble damages, **see** 73 P.S. § 201-9.2(a), the trial court did not rule that Reiter was entitled to judgment as a matter of law on his UTPCPL claim, and it does not address that statute in its Pa.R.A.P. 1925(a) opinion.  Since we vacate the judgment on other grounds, we need not explore the propriety of the trial court's calculation.

lease or upon surrender and acceptance of the leasehold premises, whichever first occurs[.]" 68 P.S. § 250.512(a). In other words, only after the lease terminates or the tenant vacates the property is the duty to return a deposit to secure against damages to the property triggered. Since any lease agreement between Reiter and Hendricks never actually commenced, let alone terminated, and Reiter never took possession of the premises, neither condition occurred that would trigger the return of funds escrowed for damages to the leased property.

Moreover, the requirement to return a security deposit absent notice of actual damages only applies when the deposit is withheld as "payment of damages to the leasehold premises." *Id*. The statute explicitly excludes from its mandates retention of a deposit for other breaches of the lease contract. *See id*. ("Nothing in this section shall preclude the landlord from refusing to return the escrow fund, including any unpaid interest thereon, for nonpayment of rent or for the breach of any other condition in the lease by the tenant."). Hendricks did not contend that he was keeping the deposit because Reiter caused damage to the leasehold premises of which Reiter never took possession. Rather, Hendricks withheld the deposit to cover Reiter's breach of other provisions of their agreement. Consequently, even deeming the contract between the parties to have been a lease, which it was not, Hendricks's retention of the deposit for Reiter's breach of the contract is not prohibited by § 512(a).

Reiter advocates for a contrary conclusion relying upon this Court's decision in **E.S. Management v. Yingkai Gao**, 176 A.3d 859 (Pa.Super. 2017), for the proposition that § 512(a) applies to "[a]ny deposit given to a landlord that secures any portion of future rent." **See** Reiter's brief at 19. He claims that this Court held that the landlord in that case violated § 512(a) by not returning the deposit when the tenants withdrew their offer to rent without executing a lease. **Id**. Reiter further relies upon **E.S. Management** to contend that the LTA violation also constituted a violation of the UTPCPL. **See** Reiter's brief at 34-35.

However, a review of our decision in **E.S. Management** reveals it to be inapposite. There, a group of students living in China paid the landlord $5,885 "to secure the execution of a rental agreement on residential property" located in Pittsburgh. **Id**. at 865. The amount represented a $100 non-refundable application fee plus three months' rent, and E.A. Management gave the students, who were not proficient in English, only two days to execute the lengthy lease emailed to them. When the students opted not to move forward with the rental, or even submit applications, E.S. Management declined to return the deposit. The students claimed violations of the LTA and the UTCPCL.

Following a bench trial, the court agreed on both counts, and this Court affirmed those rulings. Specifically, we affirmed the trial court's ruling that E.S. Management violated § 511a of the LTA by requiring a security deposit

in excess of two month's rent. **See E.S. Management**, **supra** at 863. We further affirmed, "under the circumstances of this case," the trial court's conclusion that the violation of § 511a of the LTA also constituted a violation of the UTCPCL. Specifically, we agreed that E.S. Management engaged in unfair trade practices by emailing the prospective tenants a lease that provided for a security deposit of $1,995, rather than the $5,775 it actually collected, admittedly doing so because the students were not U.S. citizens, and failing "to inform the students . . . either verbally or by writing, when it requested the $5,775.00 deposit, that this sum could be forfeited if the students chose not to rent the apartment." **Id**. (cleaned up).

Notably, neither the trial court nor this Court held that § 512 of the LTA had any applicability to E.S. Management's retention of the excessive deposit. Indeed, that provision of the LTA is not mentioned in this Court's **E.S. Management** opinion. Conversely, in this case, Reiter alleged no violation of § 511a, the provision of the LTA actually at issue in **E.S. Management**. That is understandable. Since Hendricks collected a deposit equal to only one month's rent, § 511a has no impact on this matter, even if **E.S. Management** requires a conclusion that the deposit was a "security deposit" for purposes of the LTA. Hence, Reiter's contention that our decision in **E.S. Management** offers any support for his LTA claim is misguided.

In addition, the facts herein contrast sharply with those of **E.S. Management** regarding a UTPCPL violation. Here, Reiter expressly

- 17 -

acknowledged when he signed the application that the money paid did "**not constitute a security deposit**" and that if he refused to sign a lease, the deposit would "be forfeited and retained as liquidated damages by Owner for his efforts in processing this application, holding the premises open on [Reiter's] behalf pending approval of this application, and making the necessary investigation of [his] character and reputation." Brief in Opposition to Motion for Summary Judgment, 2/6/19, at page 2 of Exhibit D-6 (emphasis in original). Hence, in addition to there being no excessive deposit required, there was no deceptive failure to disclose that the deposit was not refundable, and no indication that Reiter or his group were international students who lacked English proficiency. The ***E.S. Management*** decision, which, again, was one rendered after a trial based upon the factual findings of the court, offers no basis to grant judgment as a matter of law on Reiter's UTPCPL claim.

Reiter presents no other argument that the terms of the application contract itself violated the UTPCPL. Rather, he contends that he was justified in breaching that agreement because the proposed lease contained provisions that violate the UTPCPL and were enjoined by the AVC. ***See*** Brief in Support of Motion for Summary Judgment, 12/28/18, at Exhibits B and C. ***See also*** Reiter's brief at 30-34. Reiter cites § 9.2(b) of the UTPCPL for the proposition that he may rely upon the AVC to establish his claim. That section provides: "Any permanent injunction, judgment or order of the court **made under section 4 of this act** shall be *prima facie* evidence in an action brought under

[the section providing a private right of action] of this act that the defendant used or employed acts or practices declared unlawful by section 3 of this act." 73 P.S. § 201-9.2(b) (emphasis added).

Reiter's arguments fail. First, the AVC was entered under section five of the UTPCPL, not section 4. **Compare** 73 P.S. § 201-4 ("Restraining prohibited acts"), with 73 P.S. § 201-5 ("Assurances of voluntary compliance"). Reiter proffers no authority to establish that an AVC, rather than a court order or judgment, may establish a *prima facie* UTPCPL claim in a private action.

Second, the generic, unexecuted documents Reiter relies upon contain no identification of any particular property, tenant, lease term, or amount of rent or security deposit. **See** Praecipe to Attach Exhibits, 7/6/18, at Exhibit B. Hendricks produced evidence in opposition to Reiter's motion for summary judgment indicating that Hendricks negotiated specific contract terms with Reiter's father and offered Reiter and his group a lease containing those terms, but that Reiter and his group refused to even pick up the lease from Hendricks, let alone execute it. **See** Affidavit of Rodney Hendricks at ¶¶ 15-20. Thus, assuming *arguendo* that Reiter may prove a UTPCPL claim either by invoking the AVC or independently proving that the lease provisions violate the UTPCPL, there are material issues of fact as to what the lease terms offered to Reiter were, or whether they were the same as, or sufficiently similar to, those that were the subject of the AVC.

Third, it is not clear and free from doubt that the provisions of the lease agreement that Hendricks offered Reiter and his group bore any relation to their decision to breach the application agreement. This deficiency also impacts Reiter's claim that the application contract was unconscionable, a claim upon which the trial court alternatively cited as a basis for its judgment, albeit without expressly granting Reiter's motion as to that count. Reiter maintains that "[t]he only reason [Reiter] requested a return of the deposit was because [Hendricks] offered him an unlawful lease drafted by [Hendricks,]" and that "[h]ad [Hendricks] produced a lease that was not in clear violation of the LTA, UTPCPL, and the AVC, [Reiter] would have executed the lease." Brief in Support of Motion for Summary Judgment, 12/28/18, at 12. Reiter's narrative is directly contradicted by Hendricks's affidavit, which indicates that the lease he offered the group was specifically-negotiated with Reiter's father, that one of Reiter's associates informed Hendricks that they were not moving forward because the group fell apart, and that it was only afterwards that Reiter met with an attorney to offer a *post hoc* rationalization for their failure to follow through with their agreement to execute a lease.[8] **See** Affidavit of Rodney Hendricks at ¶¶ 15, 20-23.

_____

[8] Reiter argues that Hendricks's affidavit was properly rejected as not wholly credible. Reiter's brief at 16-18 (citing **Gruenwald v. Advanced Computer Applications, Inc.**, 730 A.2d 1004 (Pa.Super. 1999), and **Lucera v. Johns-Manville Corp.**, 512 A.2d 661 (Pa.Super. 1986). Again, we find Reiter's

- 20 -

This Court has indicated that "in order to find [a lease] provision unenforceable it [is] incumbent upon [the t]enant to show that [he or] she lacked a meaningful choice about whether to accept the provision in question and that the challenged provision unreasonably favored [the l]andlord." *Bayne v. Smith*, 965 A.2d 265, 267–68 (Pa.Super. 2009). Furthermore, we have held that unconscionability is a defense to an allegedly unfair contractual provision; "[i]t is not a plaintiff's doctrine available for affirmative relief to enjoin the provisions of a lease of real estate." *Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 340 (Pa.Super. 2013) (cleaned up), *reversed on other grounds*, 105 A.3d 1188 (Pa. 2014). Here, not only is Reiter attempting to seek affirmative relief, but the record is not clear and free from doubt that Reiter lacked meaningful choice in accepting the lease terms of which he complains.

---

authority lacking. In **Gruenwald**, this Court acknowledged the propriety of the non-moving party opposing summary judgment with his own affidavit, and reviewed the issue accepting the allegations in the affidavit as true. **See Gruenwald**, **supra** at 1009, 1011 ("Accepting Gruenwald's affidavit as true, [the described] promise of employment was far too indefinite to support a lifetime contract."). In **Lucera**, the trial court rejected an affidavit that directly contradicted testimony the affiant had previously given at trial on the specific facts at issue. **See Lucera**, **supra** at 667. We see no such justification for disregarding the affidavit of the non-moving party at summary judgment in this case. **See Kardos v. Armstrong Pumps, Inc.**, 222 A.3d 393, 401-02 (Pa.Super. 2019) (explaining the general rule is that a party may use affidavits that do not contradict the affiant's prior sworn testimony, and hearsay evidence, to create issues of fact to oppose summary judgment).

The trial court, applying the doctrine to the application contract itself, concluded that it would be unconscionable to allow Hendricks to retain the deposit because he would receive a windfall. The trial court accepted Reiter's unsupported representation that Hendricks suffered no damages because he was able to rent property to another group. *See* Opinion and Order, 9/17/19, at 3-4; Motion for Summary Judgment, 12/28/18, at 16 (citing no evidence to support the allegation that Hendricks "was able to rent the property to a third party"). It further suggested that any damages Hendricks may have sustained were his own fault, because he voluntarily took the property off the market and ceased advertising its availability. *See* Opinion and Order, 12/3/19, at 1-2 ("He very well could have kept the property advertised and therefore retained additional prospective renters to avoid loss of rent."). The court also found that Hendricks did not sustain actual damages in the full amount of the deposit, indicating that "it is quite apparent" that costs of finding replacement tenants would not be that high. *Id*. at 2. The court, acknowledging the contractual provision to be one for liquidated damages, posited as follows:

> It is unclear how an experienced landlord . . . would not be able to reasonably determine how much cost would be incurred in processing additional tenant applications. It certainly seems as though it would be far less than the $5,200.00 [Reiter] was forced to forfeit, and without actually taking possession of the property and causing physical damages therein.

*Id*. at 4-5.

- 22 -

As our earlier discussion has made clear, the record contains evidence contradicting the notion that Reiter was "forced" to breach the application agreement or that he lacked the ability to negotiate contractual provisions. Further, neither Reiter nor the trial court cited evidence that demonstrated that the liquidated damages provision of the application contract amounted to a penalty or was otherwise unreasonable. While it seemed to be so to the trial court, the fact finder may conclude otherwise. The fact finder may credit Hendricks's evidence that it is costly to find replacement tenants after the first wave of prospective renters have secured their leases. Further, there is no indication in the certified record that the student housing situation at Penn State was such that Reiter had no choice but to accede to Hendricks's terms. Nor is there evidence to support the conclusion that it is unreasonable for a landlord in those circumstances to remove a property from marketing efforts after a prospective tenant has submitted an application and deposit. While Reiter's claim may ultimately prove to be meritorious upon the full development of the evidence at trial, it is possible that the fact finder might reasonably conclude that refraining from expending resources to lease a property once there is a contingent agreement with other tenants is a reasonable and customary practice, and that it was Reiter who acted unreasonably in proceeding to submit his application and deposit after Hendricks had informed him:

> By securing the house and talking it off the market, we are making a commitment to you. As per your application, all monies paid

> will be forfeited if you would back out. Do NOT secure a property unless you are 100% certain this is the property you want!!!!

Brief in Opposition to Motion for Summary Judgment, 2/6/19, at page 2 of Exhibit D-3. Therefore, the trial court erred to the extent that it utilized the doctrine of unconscionability to buttress its summary judgment ruling that Hendricks violated the LTA by not returning Reiter's deposit.

In light of the foregoing discussion, we hold that Reiter did not establish that he is entitled to judgment as a matter of law on either his LTA or UTPCPL claim. The record is rife with disputed issues of fact that must be resolved by a fact finder that are material to the questions of the propriety of the terms of the lease that was offered to Reiter, the basis for his decision not to follow through with the application agreement, and the scope of any windfall that Hendricks may have realized as a result of enforcing the clear forfeiture provision of the application contract. Therefore, we reverse those provisions of the March 19, 2019 and September 17, 2019 orders providing that Reiter is entitled to summary judgment.

Hendricks also challenges the trial court's decision to strike his amended answer with new matter and counterclaims. Specially, Hendricks contends that he should have been permitted to establish that Reiter did not act in good faith in refusing to proceed with the leasing process, and that he is entitled to retain Reiter's deposit based upon Reiter's breach of contract. ***See*** Hendricks's brief at 42-43. Hendricks argues as follows:

Should this Court determine that the lower court erred in declaring that the lease application deposit was a security deposit, then [Hendricks] is entitled to proceed to trial and defend his retention of the proceeds as a reasonable liquidated sum founded upon [Reiter's] breach of his obligation to act in good faith to complete the leasing arrangement.

In the alternative, to the extent that the lease application deposit is determined by this Court to be a residential lease security deposit, [Hendricks] is entitled to a trial on his counterclaims for damages and set-off for loss of rents and reasonable costs incurred in mitigation of [Reiter's breach].

*Id*. at 44.

It is well established that "[t]he right to amend should be liberally granted, absent an error of law or resulting prejudice to an adverse party." *Kuwait & Gulf Link Transp. Co. v. Doe*, 216 A.3d 1074, 1093 (Pa.Super. 2019). The decision to amend a pleading is within the discretion of the trial court. *Id*.

The trial court here granted Hendricks leave to file the amended pleading. However, Reiter moved to have it stricken, contending that he had not had the opportunity to respond to the motion seeking amendment before it was ruled upon. Reiter articulated two bases for striking the pleading: (1) he was prejudiced by the timing and substance of Hendricks's counterclaims, and (2) Hendricks did not explain why he could not have raised them before discovery closed and summary judgment was decided. *See* Motion to Reconsider, 7/17/19, at ¶¶ 14-24.

We do not discern prejudice to Reiter sufficient to warrant the trial court's withdrawal of the leave to amend that it had previously granted.

- 25 -

Hendricks explains that he sought to allege the alternative counterclaims "to address the divergent and inconsistent lower court determinations." Hendricks's brief at 42. We concur in Hendricks's assessment of the trial court's rulings. Furthermore, Reiter undercut his claim of prejudice or surprise when, in order to avoid his failure to file a response to Hendricks's amended pleading being treated as admissions, Reiter took the position that he had no obligation to file a responsive pleading because Hendricks's amended answer did not inject anything new into the case:

> When a fact has been put at issue by the complaint and answer, there is no need to respond to it if it is also included in new matter or counterclaims. ***See Watson v. Green***, 231 Pa. Super. 115, 118 (1974). Any "new matter and counterclaims properly contain averments of facts only if they are extrinsic to facts averred in the complaint." ***Id***. **[Hendricks] pled no facts in his Answer with New Matter that were not at issue in the Complaint or were sufficiently extrinsic to the facts averred as to necessitate a responsive denial**.

Reiter's brief at 1 n.5 (emphasis added). Indeed, if Hendricks offered nothing new, Reiter was not prejudiced by the fact that the amendment followed the close of discovery. Further, any prejudice that Reiter may have suffered by the post-summary judgment amendment has been cured by our holding that summary judgment was improperly granted.

Consequently, we conclude that the trial court abused its discretion in not allowing Hendricks to pursue his counterclaims. ***Accord Topper by Topper v. Kulp***, 580 A.2d 794, 799 (Pa.Super. 1990) (holding that the trial court abused its discretion in denying the defendants leave to amend to assert

a counterclaim after discovery had been conducted, where the claim was consistent with the defense of which the plaintiffs had been aware such that "the plaintiffs had every chance during their initial discovery to cover this ground," and delay in trial necessitated by additional discovery was not a sufficient reason to preclude the defendant from presenting their defense and having the case decided in its merits). Therefore, we reverse the portion of the September 17, 2019 order striking Hendricks's amended answer with new matter and counterclaims.

In sum, we hold that, for any and all of the foregoing reasons, Reiter was not entitled to summary judgment, and hence, the entry of a $14,015 judgment against Hendricks constituted error. Accordingly, we vacate the judgment, reverse the orders granting summary judgment and striking Hendricks's amended answer, and remand for further proceedings to properly resolve the factual and legal issues presented in this case.[9] Based upon our disposition, we deny Reiter's motion for costs and fees.

Judgment vacated. Orders granting summary judgment and striking the amended answer and new matter reversed. Motion for fees and costs denied. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[9] Hendricks asks this Court to "provide the lower court with direction" on other issues in the case. We decline to do so. Hendricks will have the opportunity to litigate his claims upon remand, and may seek relief from this Court if he thereafter finds himself aggrieved by the resulting final order.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2020